UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

---

| | |
|---|---|
| Jane Doe, : | |
| : | |
| *Plaintiff*, : | |
| : | **COMPLAINT** |
| v. : | |
| : | **Civil Action No.** |
| The El Paso County Hospital District; Tracy : | |
| Yellen; David Osborn; Laura Ponce; Jose Luna; : | |
| William Hanson; Nicolas Gonzalez; Monica : | |
| Salaiz-Narvaez; the University Medical Center : | |
| of El Paso; Michael Parsa; Christopher Cabanillas;: | |
| Two Unknown United States Customs and Border : | **JURY TRIAL DEMANDED** |
| Protection Supervising Agents; United States : | |
| Customs and Border Protection Agent Portillo; : | |
| and United States Customs and Border Protection : | |
| Agent Herrera, : | |
| : | |
| *Defendants*. : | |

---

**PRELIMINARY STATEMENT**

1.      This action concerns constitutional limits on the government's ability to invade a person's most intimate bodily spaces to search for drugs without any judicial oversight or even reasonable suspicion. Government agents brutally probed Plaintiff Jane Doe's[1] body cavities against her will in multiple, redundant and increasingly intrusive searches even though none of the searches uncovered any evidence of internal drug smuggling.  After enduring approximately six hours of demeaning and highly invasive searches, Ms. Doe was released without any charge.

2.      Ms. Doe, a 54-year-old United States citizen, returned to the United States from Mexico via the Cordova Bridge in El Paso, Texas, on December 8, 2012.  Upon Ms. Doe's

---

[1] On account of the highly personal and sensitive nature of the events set forth in this Complaint, Ms. Doe has simultaneously moved for leave to proceed anonymously to protect her identity.

1

entering the United States, a drug sniffing dog jumped on her, setting off a sequence of searches conducted by United States Customs and Border Protection ("CBP") agents and employees of the University Medical Center of El Paso ("Medical Center").

3. Over the course of the next six hours, Defendants subjected Ms. Doe to a series of highly invasive searches, any *one* of which would have been humiliating and demeaning. First, government agents stripped searched Ms. Doe and made a visual and manual inspection of her genitals and anus. Finding nothing, Defendants next subjected her to an observed bowel movement. When that procedure yielded no evidence of drugs, Defendants X-rayed Ms. Doe. Having found nothing, Defendants next shackled Ms. Doe to an examining table and inserted a speculum into her vagina, performed a rectal exam on her, and conducted a bimanual cavity search of her vagina. Still not satisfied, Defendants subjected Ms. Doe to a CT scan and again found no evidence of drugs.

4. Though Defendants conducted these searches against the will of Ms. Doe and without her consent, the Medical Center billed Ms. Doe more than $5,000.00 for its "services."

5. The searches conducted by Medical Center employees and the CBP agents traumatized Ms. Doe physically and emotionally. She seeks relief from this Court for her injuries.

## PARTIES

6. The El Paso County Hospital District governs the healthcare system for El Paso County. This healthcare system includes the University Medical Center of El Paso.

7. Defendants Tracy Yellen, David Osborn, Laura Ponce, Jose Luna, William Hanson, Nicolas Gonzalez and Monica Salaiz-Narvaez are members of the Board of Managers of the El Paso County Hospital District, which governs the El Paso County Hospital District and is

the policy setting body for the University Medical Center of El Paso.  Each member of the Board of Managers (collectively, the "Board Manager Defendants") is sued in his or her official capacity.

8.    Defendant University Medical Center of El Paso is a government hospital, owned by the people of El Paso and part of the El Paso County Hospital District.

9.    Defendant Michael Parsa is a medical doctor employed by the University Medical Center of El Paso.  At all times relevant to this Complaint, he was acting in the course and within the scope of his employment.  He is sued in his individual capacity.

10.   Defendant Christopher Cabanillas is a medical doctor employed by the University Medical Center of El Paso.  At all times relevant to this Complaint, he was acting in the course and within the scope of his employment.  He is sued in his individual capacity.

11.   Defendants Two Unknown United States Customs and Border Protection Supervising Agents are employees of the United States Customs and Border Protection.  At all times relevant to this Complaint, these agents were acting in the course and within the scope of their employment.  They are sued in their individual capacities.

12.   Defendant United States Customs and Border Protection Agent Portillo is an employee of the United States Customs and Border Protection.  At all times relevant to this Complaint, she was acting in the course and within the scope of her employment.  She is sued in her individual capacity.

13.    Defendant United States Customs and Border Protection Agent Herrera is an employee of the United States Customs and Border Protection.  At all times relevant to this Complaint, she was acting in the course and within the scope of her employment.  She is sued in her individual capacity.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Ms. Doe's claims arise under the Constitution and laws of the United States of America.

15. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because the incident giving rise to this action occurred in this district.

## FACTS

16. The Cordova Bridge ("Bridge") in El Paso, Texas, connects the City of El Paso and Ciudad Juarez, Mexico. CBP's El Paso Service Port operates and staffs CBP agents at the Bridge.

17. All individuals entering the United States from Ciudad Juarez via the Bridge must present themselves for inspection by a CBP agent at the Bridge.

### *Ms. Doe Entered the United States Without Any Contraband or Drugs*

18. Jane Doe is a petite 54-year-old United States citizen. She resides with her husband in Lovington, New Mexico.

19. Ms. Doe recently obtained a passport and looked forward to traveling outside of the United States. In particular, she was eager to visit a close family friend in Ciudad Juarez whom she considers, and refers to as, her uncle. This friend resided in the United States but was deported to Mexico. Since his deportation, Ms. Doe makes an effort to visit him about once a month.

20. On December 8, 2012, Ms. Doe briefly visited her family friend. She returned to the United States without any contraband in her possession and crossed the Bridge at approximately 2:00 p.m.

21. Upon presenting herself for inspection at the Bridge, Ms. Doe had her passport swiped by a CBP agent. The CBP agent then informed her that she was randomly picked for additional screening and ordered her to secondary inspection.

22. Ms. Doe complied and walked to secondary where Defendant CBP agents Portillo and Herrera frisked Ms. Doe. through her clothing. One of the agents ran her finger over Ms. Doe's genital area during the frisk.

23. One of the agents instructed Ms. Doe to squat; she complied. An agent put her finger in the waistband of Ms. Doe's pants and inserted her finger in the crevice of Ms. Doe's buttocks.

24. The invasive frisk did not produce any evidence of contraband or of internal drug smuggling.

25. Ms. Doe did not consent to this frisk. She was embarrassed and upset by it.

26. Ms. Doe was then directed to stand in a line with other people. While she was standing in line, a CBP dog handler walked by Ms. Doe and hit the ground by her feet, but did not hit the ground by any of the others in the line. The dog responded by lunging onto Ms. Doe and landing its front paws on her torso. Ms. Doe was startled and frightened by the dog.

27. Because Ms. Doe did not possess any contraband, the dog either did not alert or the response was not a proper alert.

*Additional Searches Did Not Produce Any Evidence of Internal Drug Smuggling*

28. Defendant 1, an unknown supervising CBP agent, mandated additional searches. CBP agents Portillo and Herrera grabbed Ms. Doe and led her to a private room. There, they ordered Ms. Doe to pull down her pants and crouch. She followed the order. One of the agents examined her anus with a flashlight.

29. Ms. Doe was commanded to lean backwards in her crouched position. She again complied. One of the agents then parted Ms. Doe's vulva with her hand, pressed her fingers into Ms. Doe's vagina and visually examined her genitalia with a flashlight.

30. Ms. Doe did not consent to this strip search nor to having her body touched in so intimate a way by government agents. Ms. Doe was understandably humiliated and she began crying.

31. The agents instructed Ms. Doe to get dressed. The strip search did not produce any evidence of contraband or of internal drug smuggling. Still, agents Portillo and Herrera sealed the cuffs of Ms. Doe's pants by taping her pants to her legs.

### *The Searches Continued Without Consent, a Warrant, or Even Sufficient Suspicion of Criminal Activity*

32. At approximately 4:00 p.m., CBP agents Portillo and Herrera forcibly transported Ms. Doe in handcuffs to the University Medical Center of El Paso. One of the agents informed Ms. Doe that they needed to monitor her bowel movement.

33. During the car ride to the Medical Center, Ms. Doe asked if the agents had a warrant. One of them responded that they did not need a warrant.

34. Ms. Doe arrived at the Medical Center at approximately 4:29 p.m. Agents Portillo and Herrera led her to a room and handcuffed her to the examination table in the room. From the time of her arrival until she was released from the Medical Center, Ms. Doe did not present any symptoms consistent with internal drug smuggling nor did she exhibit any symptoms of feeling sick or unwell.

35. Without obtaining consent or obtaining a detailed medical history, Defendants Doctor Christopher Cabanillas and Doctor Michael Parsa (collectively called "Doctors") continued the search for drugs along with agents Portillo and Herrera.

36. Medical Center staff wheeled a portable toilet into the room and directed Ms. Doe to ingest a laxative. CBP agents Portillo and Herrera removed the tape from Ms. Doe's pants and remained in the room with her while the laxative took effect. The agents observed Ms. Doe have a bowel movement. No evidence of internal drug smuggling was found as a result of this search.

37. Defendant Cabanillas, in consultation with Defendant Parsa, ordered an X-ray of Ms. Doe's abdomen. Medical Center staff X-rayed Ms. Doe, subjecting her to unnecessary radiation. According to medical records, the exam produced "[n]o evidence of radiopaque foreign bodies."

### *Ms. Doe's Anus and Vagina Were Probed Without a Warrant, Consent or Any Suspicion of Internal Drug Smuggling*

38. Even though prior searches resulted in no evidence of internal drug smuggling, CBP agents and the Doctors continued the intrusion on Ms. Doe's body without her consent and without a warrant.

39. After the X-ray, Ms. Doe was again handcuffed to the examination table. CBP agents Portillo and Herrera and Medical Center personnel were present in the room. Defendants left the door to the examining room open, and Ms. Doe could see hospital personnel at the nurses' station in the hallway. She was angry that CBP had not released her and scared about what would happen next.

40. Defendant Parsa entered the examination room and barked an order that Ms. Doe spread her legs. She complied.

41. Ms. Doe was mortified. Defendants did not even have the decency to close the door to the examining room so that Ms. Doe would not also be subjected to being observed by passersby as she endured a forced gynecological exam.

42.     Defendant Parsa then conducted a series of examinations. While agents Portillo and Herrera and other Medical Center staff watched, he inserted a speculum into Ms. Doe's vagina and observed the interior cavity. According to medical records, Defendant Parsa did not see any foreign objects or evidence of internal drug smuggling.

43.     Defendant Parsa also stuck his fingers into Ms. Doe's vagina while palpitating her abdomen. This bimanual cavity search was negative: According to medical records, Defendant Parsa did not feel any foreign objects or evidence of internal drug smuggling.

44.     Defendant Parsa also conducted a rectal examination: he inserted his fingers into Ms. Doe's rectum and probed the orifice for foreign bodies. According to medical records, Defendant Parsa did not feel any or find evidence of internal drug smuggling.

45.     While her rectum was being probed, agents Portillo and Herrera and Medical Center staff watched. Ms. Doe felt that she was being treated less than human, like an animal.

46.     Ms. Doe was shocked and humiliated by these exceedingly intrusive searches. That an audience of CBP agents and Medical Center staff observed her being probed compounded her feeling of degradation.

### *The Government Continued Searching Ms. Doe Even After Visual and Physical Inspections of Her Vaginal and Rectal Cavities Produced No Evidence of Internal Drug Smuggling*

47.     Still not satisfied, CBP and the Medical Center employees subjected Ms. Doe to yet another procedure.

48.     Defendant Cabanillas, in consultation with Defendant Parsa, ordered a CT exam of Ms. Doe's abdomen and pelvis. During the CT scan, Medical Center staff barraged Ms. Doe's body to create a three dimensional image with more detail than a typical X-ray. In so doing, they forcibly exposed her to "between 150 and 1,100 times the radiation of a conventional x-ray, or around a year's worth of exposure to radiation from both natural and artificial sources in the

environment."[2]  According to medical records, the exam resulted in "[n]o . . . evidence of ingested radiopaque objects."

49.     After the CT scan, a CBP agent presented Ms. Doe with a choice: she could either sign a medical consent form, despite the fact that she had not consented, in which case CBP would pay for the cost of the searches; or if she refused to sign the consent form, she would be billed for the cost of the searches.  She refused. The Medical Center consent form reflects that Ms. Doe withheld consent:  "Refusal to Sign" is written in the patient signature line, a refusal witnessed by Jessica R.

### *Ms. Doe Was Traumatized by the Approximately Six Hours of Degrading Searches*

50.     Ms. Doe was released from custody without any charges at approximately 8:00 p.m., only after enduring roughly six hours of dehumanizing, invasive and degrading searches.

51.     Throughout the unreasonable searches of Ms. Doe's body cavities, she continually denied the accusations that she was smuggling drugs internally and refused consent for each search.

52.     At no point during the searches of Ms. Doe did CBP agents obtain a warrant authorizing a search of her body.

53.     The searches conducted by Defendant CBP agents and the Doctors injured Ms. Doe physically, mentally and emotionally.  Her labia, vaginal opening, and anus were left raw and sore and she felt violated, demeaned and powerless as a result of the searches.

54.     Ms. Doe continues to suffer mentally and emotionally.  Since her ordeal, Ms. Doe has not been able to be physically intimate with her husband.  When she is in public, she feels as

---

[2] Carina Storrs, *How Much Do CT Scans Increase the Risk of Cancer*, Scientific American, July 9, 2013, *available at* http://www.scientificamerican.com/article.cfm?id=how-much-ct-scans-increase-risk-cancer.

if everyone is staring at her, so she avoids public spaces and stays at home whenever possible. She still cries when she thinks about this incident.

55. True to CBP's word, shortly after these searches were conducted, the Medical Center and Texas Tech University Health Sciences Center invoiced Ms. Doe over $5,000.00 for the cost of the searches conducted on her. She refuses to pay.

### *The Searches That Injured Ms. Doe Were the Inevitable Result of the Medical Center's Custom and Practice of Handling Patients Brought by CBP Agents*

56. Medical Center policy L-13 on searches by hospital personnel does not permit an invasion of a person's body for purposes of a search without either consent or a search warrant. However, in practice, the Medical Center staff and CBP agents routinely conduct invasive cavity searches without a warrant, consent or sufficient suspicion to justify the searches. When Ms. Doe expressed dismay about the unreasonable searches she suffered, a Medical Center employee responded that these procedures were routinely followed when an individual is brought in by CBP agents. The employee also told Ms. Doe that what happened to her was not invasive.

57. Upon information and belief, Medical Center doctors and nurses are not trained on conducting law enforcement searches nor on the constraints the Fourth Amendment places on those searches. Upon information and belief, Medical Center staff has no process in place to ensure that searches performed by hospital staff comport with constitutional limits. As a result, Medical Center personnel, who are untrained in the law, inevitably conduct invasive, unreasonable law enforcement searches without sufficient justification and violate the constitutional rights of the persons searched.

58. Given the Medical Center's proximity to the border, its emergency room personnel predictably confront situations where CBP officials bring individuals in for law enforcement searches without a warrant. Consequently, the Medical Center's failure to train its

personnel on the constitutional limits constraining law enforcement searches amounts to a deliberate indifference to the violation of individuals' constitutional rights, including the rights of Ms. Doe.

59. On information and belief, these searches are not conducted by the doctors alone but also routinely involve supervising CBP agents. Throughout the searches of Ms. Doe's body cavities, Defendant 2, another unknown supervising CBP agent, communicated over the phone with CBP officers Portillo and Herrera and relayed instructions about the searches. Those instructions were executed by CBP officers and Medical Center staff. On information and belief, Medical Center personnel and CBP agents' routine invasion of a person's body for law enforcement purposes in an unreasonable manner and without a warrant or sufficient suspicion amounts to a pattern and practice.

60. The Medical Center and CBP's pattern and practice of jointly conducting law enforcement searches in an unreasonable manner and without a warrant or sufficient suspicion and without training medical center employees on the constitutional limits constraining those searches injured Ms. Doe and violated her constitutional rights.

61. Policymakers for the Medical Center, including the El Paso County Hospital District and the members of its Board of Managers, had constructive notice of this pattern and practice because the proper discharge of policymakers' responsibilities would have uncovered the flagrant and routine constitutional violations resulting from the Medical Center and CBP's pattern and practice.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unreasonable Seizure, False Arrest, and False Imprisonment
in Violation of the Fourth Amendment to the U.S. Constitution Against Defendants
Portillo and Herrera and Unknown CBP Agents 1 and 2
(*Bivens* Claim)**

62. Plaintiff incorporates paragraphs 1-61 as set forth above.

63. As a direct result of their actions set forth in this Complaint, Defendants Portillo, Herrera and CBP agents 1 and 2 acted under the color of federal law to deprive Plaintiff of her right to be free from unreasonable seizures by seizing, arresting and detaining her without reasonable suspicion or probable cause that she was committing a crime, in violation of the Fourth Amendment to the U.S. Constitution.

64. This cause of action for the violation of Plaintiff's Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971).

### SECOND CAUSE OF ACTION
**Unreasonable Search in Violation of the Fourth Amendment to the U.S. Constitution
Against Defendants Portillo, Herrera and Unknown CBP Agents 1 and 2
(*Bivens* Claim)**

65. Plaintiff incorporates paragraphs 1-61 as set forth above.

66. As a direct result of their actions set forth in this Complaint, Defendants Portillo, Herrera and CBP agents 1 and 2 acted under the color of state law to deprive Plaintiff of her right to be free from unreasonable search in violation of the Fourth Amendment to the U.S. Constitution by 1) searching her person without reasonable suspicion or probable cause that she was committing a crime; and/or 2) searching her person in a highly unreasonable manner that invaded her right to bodily integrity and privacy.

67. This cause of action for the violation of Plaintiff's Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971).

**THIRD CAUSE OF ACTION**
**Deprivation of Due Process in Violation of the Fifth Amendment to the U.S. Constitution Against Defendants Portillo, Herrera and Unknown CBP Agents 1 and 2**
**(*Bivens* Claim)**

68.     Plaintiff incorporates paragraphs 1-61 as set forth above.

69.     As a direct result of their actions set forth in this Complaint, Defendants Portillo, Herrera and CBP agents and 2 acted under the color of federal law to deprive Plaintiff of her right to due process by acting in a manner that shocks the conscience in violation of the Fifth Amendment to the U.S. Constitution.

70.     This cause of action for the violation of Plaintiff's Fifth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971).

**FOURTH CAUSE OF ACTION**
**Unreasonable Seizure, False Arrest and False Imprisonment in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Against Defendants Parsa and Cabanillas**
**(42 U.S.C. §1983 Claim)**

71.     Plaintiff incorporates paragraphs 1-61 as set forth above.

72.     As a direct result of their actions set forth in this Complaint, Defendants Parsa and Cabanillas acted under the color of state law to deprive Plaintiff of her right to be free from unreasonable seizures by seizing, arresting and detaining her without reasonable suspicion or probable cause that she was committing a crime, in violation of the Fourth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment.

73.     This cause of action for the violation of Plaintiff's Fourth and Fourteenth Amendment right is brought pursuant to 42 U.S.C. §1983.

**FIFTH CAUSE OF ACTION**
**Unreasonable Search in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Against Defendants Parsa and Cabanillas**
**(42 U.S.C. §1983 Claim)**

74. Plaintiff incorporates paragraphs 1-61 as set forth above.

75. As a direct result of their actions set forth in this Complaint, Defendants Parsa and Cabanillas acted under the color of state law to deprive Plaintiff of her right to be free from unreasonable search in violation of the Fourth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment, by 1) searching her person without reasonable suspicion or probable cause that she was committing a crime; and/or 2) searching her person in a highly unreasonable manner that invaded her right to bodily integrity and privacy.

76. This cause of action for the violation of Plaintiff's Fourth and Fourteenth Amendment right is brought pursuant to 42 U.S.C. §1983.

**SIXTH CAUSE OF ACTION**
**Deprivation of Due Process in Violation of the Fourteenth Amendment to the U.S. Constitution Against Defendants Parsa and Cabanillas**
**(42 U.S.C. §1983 Claim)**

77. Plaintiff incorporates paragraphs 1-61 as set forth above.

78. As a direct result of their actions set forth in this Complaint, Defendants Parsa and Cabanillas acted under the color of state law to deprive Plaintiff of her right to due process by acting in a manner that shocks the conscience in violation of the Fourteenth Amendment to the U.S. Constitution.

79. This cause of action for the violation of Plaintiff's Fourteenth Amendment right is brought pursuant to 42 U.S.C. §1983.

## SEVENTH CAUSE OF ACTION
**Unreasonable Seizure, False Arrest and False Imprisonment in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Against the El Paso County Hospital District, the Board of Manager Defendants and the Medical Center**
**(42 U.S.C. §1983 Claim)**

80. Plaintiff incorporates paragraphs 1-61 as set forth above.

81. The custom and practice of the El Paso County Hospital District, the Board of Manager Defendants, and the University of El Paso Medical Center caused the violation of Plaintiff's right to be free from unreasonable seizures.

82. This cause of action for the violation of Plaintiff's Fourth Amendment right, as incorporated by the Fourteenth Amendment, is brought pursuant to 42 U.S.C. §1983.

## EIGHTH CAUSE OF ACTION
**Unreasonable Search in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Against the El Paso County Hospital District, the Board of Manager Defendants and the Medical Center**
**(42 U.S.C. §1983 Claim)**

83. Plaintiff incorporates paragraphs 1-61 as set forth above.

84. The custom and practice of the El Paso County Hospital District, the Board of Manager Defendants and the University of El Paso Medical Center caused the violation of Plaintiff's right to be free from unreasonable searches.

85. This cause of action for the violation of Plaintiff's Fourth Amendment right, as incorporated by the Fourteenth Amendment, is brought pursuant to 42 U.S.C. §1983.

## NINTH CAUSE OF ACTION
### Deprivation of Due Process In Violation of the Fourteenth Amendment to the U.S. Constitution Against the El Paso County Hospital District, the Board of Manager Defendants and the Medical Center
### (42 U.S.C. §1983 Claim)

86. Plaintiff incorporates paragraphs 1-61 as set forth above.

87. The custom and practice of the El Paso County Hospital District, the Board of Manager Defendants and the University of El Paso Medical Center caused the violation of Plaintiff's right to due process.

88. This cause of action for the violation of Plaintiff's Fourteenth Amendment right is brought pursuant to 42 U.S.C. §1983.

## JURY TRIAL DEMANDED

89. Plaintiff respectfully demands a jury trial.

## PRAYER FOR RELIEF

90. WHEREFORE, Jane Doe respectfully asks this Court to:

   a. declare that the actions of Defendants violated the U.S. Constitution;

   b. enjoin the Medical Center from engaging in invasive law enforcement searches;

   c. award compensatory damages in an amount to be determined at trial;

   d. award punitive damages in an amount to be determined at trial;

   e. award attorney's fees and costs pursuant to 42 U.S.C. §1988; and

   f. grant such other and further relief as this Court deems proper.

Respectfully Submitted,

_____/S/_____
Adriana Piñon

    New York State Bar No. 4634259
    apinon@aclutx.org

    Rebecca L. Robertson[+]
    Texas State Bar No. 00794542
    rrobertson@aclutx.org

    AMERICAN CIVIL LIBERTIES UNION
     OF TEXAS
    1500 McGowen Street, Suite 250
    Houston, Texas 77004
    Telephone No.: (713) 942-8146
    Facsimile No.: (713) 942-8966


    Laura Schauer Ives*
    New Mexico State Bar No: 12463
    lives@aclu-nm.org

    Alexandra Smith*
    New Mexico State Bar No: 15651
    asmith@aclu-nm.org

    Jesse Hale*
    New Mexico State Bar No: 145780
    jhale@aclu-nm.org

    AMERICAN CIVIL LIBERTIES UNION
     OF NEW MEXICO
    P.O. Box 566
    Albuquerque, New Mexico 87103
    Telephone No.: (505) 266-5915
    Facsimile No.: (505) 266-5916

    *Counsel for Plaintiff*


Dated: December 18, 2013

* Application for admission *pro hac vice* forthcoming
[+] Application for admission granted, oath forthcoming