**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-00406-DCG** |
| | § | |
| **EL PASO COUNTY HOSPITAL DISTRICT; TRACY YELLEN; DAVID OSBORN; LAURA PONCE; JOSE LUNA; WILLIAM HANSON; NICOLAS GONZALEZ; MONICA SALAIZ-NARVAEZ; UNIVERSITY MEDICAL CENTER OF EL PASO; MICHAEL PARSA; CHRISTOPHER CABANILLAS; CBP AGENT PORTILLO; CBP AGENT HERRERA; CHIEF JUAN QUINONES; AGENT FELIX CASTRO; AGENT GILBERT ARCIERO; and UNITED STATES,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Presently before the Court is a "Motion for Protective Order" ("Motion") (ECF No. 133), filed by Defendants United States Customs and Border Protection ("CBP") Officers Alicia Portillo, Veronica Herrera, Supervisory Officers Felix Castro, Gilbert Arciero, Chief Juan Quiñones (the "individual Defendants"), and the United States (collectively with the individual Defendants, "Defendants"), on April 17, 2015. Plaintiff Jane Doe ("Plaintiff") filed a Response (ECF No. 137) on May 4, 2015, and Defendants filed a Reply (ECF No. 139) on May 12, 2015. After careful consideration of the Motion, the record, and the applicable law, the Court enters the following order.

## I. BACKGROUND[1]

Plaintiff initiated this action on December 18, 2013, in part pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Compl. 12–13, ECF No. 1. In her initial Complaint, Plaintiff alleged that on December 8, 2012, several CBP agents detained her and subjected her to intrusive bodily searches when she attempted to enter the United States from Mexico via a port of entry in El Paso, Texas. *See id.* at 1–2. Based on this allegation, Plaintiff brought three *Bivens* claims against the agents. The first two of these claims—(1) unreasonable seizure, false arrest, and false imprisonment; and (2) unreasonable search—arise under the Fourth Amendment to the United States Constitution. *See id.* at 12. The third claim—deprivation of Due Process—arises under the Fifth Amendment to the United States Constitution. *See id.* at 13. Since initiating this action, however, Plaintiff has amended her initial Complaint twice. On June 3, 2014, Plaintiff amended her Complaint to identify three previously unknown defendants. *See* Am. Compl., ECF No. 50. On July 25, 2014, Plaintiff amended her Complaint a second time and added two claims against the United States under the Federal Tort Claims Act ("FTCA") for the alleged conduct of the CBP agents. *See* Second Am. Compl. 3, 12–13, ECF No. 66.

On August 12, 2014, the individual Defendants filed a motion for summary judgment raising a qualified immunity defense against Plaintiff's *Bivens* claims. *See* Defs' Mot. Summ. J. 9–22, ECF No. 71. In response, Plaintiff argued, *inter alia*, that summary judgment was premature because the only discovery the parties had exchanged concerned the identity of some of the individual CBP agents involved in the case. *See* Pl.'s Opp. Defs.' Mot. Summ. J. 4–7,

[1] The Court assumes familiarity with the facts of this case. For a detailed description of Plaintiff's factual allegations, see the Court's Order Granting Plaintiff's Second Motion for Leave to Proceed Anonymously, ECF No. 126.

ECF No. 79; *see also id.* at 14–24, 36. On February 11, 2015, Judge David Briones[2] denied the individual Defendants' motion for summary judgment, without prejudice to re–filing, pursuant to Federal Rule of Civil Procedure 56(d).[3] *See* Mem. Op. and Order 1, ECF No. 113. Judge Briones found that Plaintiff "sufficiently demonstrate[d], pursuant to Rule 56(d), that she should be allowed to conduct discovery before responding to" the motion for summary judgment. *Id.* at 9. Judge Briones therefore "allow[ed] [Plaintiff] to conduct discovery on her *Bivens* claims that is limited to the qualified immunity issue," and instructed the parties to "submit a joint proposed scheduling order as to all pending claims." *Id.* On March 12, 2015, the parties filed a joint proposed discovery plan, ECF No. 123, but they disagreed regarding the scope of discovery that should be allowed in accordance with Judge Briones' February 11, 2015, order, *see* Mot. 3.

Thus, Defendants filed the instant motion seeking to tailor discovery narrowly "to uncover only those facts needed to rule on [the individual Defendants'] immunity defense." *See id.* at 3–6. Defendants specifically object to five discovery requests—involving deposition testimony and production of documents—arguing that these requests appear calculated to obtain discovery related to the merits of the case and thus exceed the scope of limited discovery that should be allowed. *See id.* at 8–13. Defendants also seek to stay discovery on Plaintiff's FTCA claims against the United States until the Court rules on the individual Defendants' qualified immunity defense. *See id.* at 13–15. Plaintiff responds that (1) Judge Briones already found that she is entitled to the discovery requested, (2) the discovery at issue is germane to the qualified immunity defense, and (3) discovery against the United States on Plaintiff's FTCA claims should

---

[2] Judge Briones recused himself from the instant action on March 20, 2015, and the case was re–assigned to this Court. *See* Order of Recusal, ECF No. 124.

[3] Rule 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may," deny a pending motion for summary judgment, allow time to conduct discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d).

proceed concurrently with the discovery pertinent to the qualified immunity issue. *See* Resp. 1–13.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) allows a "party or any person from whom discovery is sought [to] move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). Relevant here, a "court may, for good cause, issue an order" forbidding the discovery sought or limiting the scope of discovery into certain matters. *See id.* "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (*per curiam*) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *accord In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (*per curiam*); *Gutierrez v. Benavides*, 292 F.R.D. 401, 403 (S.D. Tex. 2013).

## III. DISCUSSION

Defendants' Motion calls on the Court to address the scope of discovery to which Plaintiff is entitled in light of two considerations. First, the Court must consider Judge Briones' order denying the individual Defendants' motion for summary judgment and discussing the discovery issues now before the Court.[4] Second, the Court must consider what discovery is

[4] On February 11, 2015, Judge Briones found "that [Plaintiff] should be allowed to conduct discovery, but that [Plaintiff]'s discovery should be limited to the issues raised in Attorney Piñon's declaration and [Plaintiff's Opposition to Defendants' Motion for Summary Judgment] that could potentially create genuine issues of material fact as to the CBP Officers' qualified immunity defense." Mem. Op. and Order 8. Attorney Piñon's declaration, cited in Judge Briones' order, refers to the declaration of attorney Adriana Piñon, Plaintiff's counsel (hereinafter "Piñon Declaration"), attached as Exhibit B to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (hereinafter "Opposition"). *See* Pl.'s Opp. Defs.' Mot. Summ. J., Ex. B.

needed to resolve the individual Defendants' qualified immunity defense. The Court reviews Judge Briones' order before addressing each of the five discovery requests raised by Defendants' Motion.

### *A. The February 11, 2015, Order*

Contrary to Plaintiff's contentions, Judge Briones' order did not grant her "permission to take the discovery to which Defendants object." *See* Resp. 2. Rather, that order "limited" Plaintiff's discovery "to the issues raised in [the Piñon Declaration and Plaintiff's Opposition] *that could potentially create genuine issues of material fact* as to the CBP Officers' qualified immunity defense." Mem. Op. and Order 8 (emphasis added). This language limits Judge Briones' order to a subset of the issues raised by the Piñon Declaration and Plaintiff's Opposition; the order did not give Plaintiff *carte blanche* to discover *all* issues raised by Plaintiff's Opposition.

Plaintiff's contentions are not without support, however. Judge Briones' order does state that Plaintiff "sufficiently explained how the evidence she seeks would plausibly create genuine issues of material fact." *Id.* at 8. But that statement was based on a cursory review of the discovery requests in the Piñon Declaration. Judge Briones did not decide whether each request in the Piñon Declaration is appropriate or permissible notwithstanding legal constraints on the discovery process that attach when a qualified immunity defense is raised. That issue is before the Court now. Instead, Judge Briones decided a narrower issue: whether Plaintiff had sufficiently shown that she could not "present facts essential to justify [her] opposition [to the motion for summary judgment]." *See* Rule 56(d); Mem. Op. and Order 8 ("In sum, the Court finds that [Plaintiff] has met the requirements of Rule 56(d).").

Judge Briones' bifurcated analysis confirms the Court's reading of the February 11, 2015, order. Judge Briones first set out to determine whether Plaintiff had made the requisite showing under Rule 56(d), and then considered, separately, the scope of discovery to which Plaintiff should be entitled. *See* Mem. Op. and Order 6 ("The Court will first analyze [Plaintiff]'s request for discovery pursuant to Rule 56(d) before determining the scope of the discovery that [Plaintiff] will be allowed to conduct."); *see also id.* at 8 (discussing separately "the scope of discovery that [Plaintiff] will be permitted"). That is, whether a party who opposes summary judgment pursuant to Rule 56(d) has made the requisite showing and the discovery that party needs after making such a showing are different matters.

Judge Briones did not reach a conclusion regarding the second part of the inquiry. Instead, Judge Briones allowed the parties to discuss the scope of discovery in light of his ruling on Plaintiff's Rule 56(d) showing, and opted not to intervene prematurely in a discovery dispute that the parties could address on their own. This is evinced by the lack of any discussion in the order's "Discovery" section regarding the specific requests in the Piñon Declaration. *See id.* at 8–9. More tellingly, Judge Briones instructed the parties "to confer and submit *for the Court's approval* a joint proposed discovery plan tailored to resolving the qualified immunity defense." *See id.* at 9 (emphasis added). In sum, Judge Briones' finding that a decision on the individual Defendants' qualified immunity defense should be postponed did not amount to a finding that Plaintiff is entitled to all discovery requested by the Piñon Declaration without regard to valid limitations on the scope of otherwise permissible discovery.

### *B. The Scope of Discovery*

"When a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Toney v. Owens*, 779 F.3d 330, 336

(5th Cir. 2015) (quoting *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 476 (5th Cir. 2014)). Therefore, what Plaintiff must show to overcome the individual Defendants' qualified immunity defense informs the scope of discovery to which she is entitled. The two–part inquiry into qualified immunity is first whether a constitutional right would have been violated on the facts alleged, and second "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)), *cert. denied*, 135 S. Ct. 137 (2014). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiff is accordingly entitled "to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official[s] actually took." *See Crawford–El v. Britton*, 523 U.S. 574, 600 (1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)). Such discovery may show that the individual Defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.

***C. The Discovery Requests***

**1. Request 1: Deposition of CBP Chief Juan Quiñones**

Plaintiff anticipates deposing the individual Defendants, Watch Commander Gomez, and CBP Chief Brady due to their alleged connection to the search of Plaintiff's person. *See* Piñon Decl. 6–7; Mot. 9; Resp. 5. Defendants object to the deposition of Chief Quiñones on the ground that he had limited involvement with the search at issue here. *See* Mot. 9. Because of this limited involvement, and because Plaintiff has not alleged that Chief Quiñones is vicariously

liable for his subordinates' conduct, Defendants urge the Court to prevent Plaintiff from taking Chief Quiñones' deposition. *See id.*

The Court agrees with Plaintiff that deposing Chief Quiñones is reasonably calculated to lead to the discovery of admissible evidence bearing on the issue of qualified immunity. First, it is Plaintiff's *allegations*, not Defendants' explanation of the events in the Complaint, that is mainly relevant in determining what discovery is appropriate. *See Anderson*, 483 U.S. at 646 n.6 (finding that "if the actions [a defendant] claims he took are different from those the [plaintiff] *allege[s]* . . ., then discovery may be necessary before [that defendant]'s motion for summary judgment on qualified immunity grounds can be resolved" (emphasis added)); *Fleming v. Tunica Cnty. Miss.*, 497 F. App'x 381, 388 (5th Cir. 2012) (*per curiam*).

Second, because Plaintiff pleads a plausible Fourth Amendment *Bivens* claim against Chief Quiñones, she is entitled to depose him. A Fourth Amendment claim under *Bivens* turns on whether the officer sued had probable cause to conduct the search or carry out the arrest at issue. *See, e.g.*, *De La Paz v. Coy*, --- F.3d ----, Nos. 13–50768, 14–10018, 2015 WL 2330110, at *3 (5th Cir. May 14, 2015). The probable cause standard[5] is essentially the same whether the liberty deprivation results from a warrantless search or a warrantless arrest: in either context the officer must act on facts and circumstances within his or her knowledge before arresting or searching an individual. *Compare Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) ("Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about

[5] The Court does not decide here what standard—*e.g.*, probable cause, reasonable suspicion, or a lower standard—controls the search of Plaintiff. The parties do not raise the issue, and inquiry into the facts known to the individual Defendants would be necessary under any standard for Plaintiff to rebut a qualified immunity defense.

to commit an offense." (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979))), *with Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) ("Probable cause [to search] exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." (citing *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983))); *see also United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) (citations omitted). Therefore, if Plaintiff properly pled a Fourth Amendment *Bivens* claim based on an alleged lack of probable cause, she is entitled to discovery that may show the individual Defendants, including Chief Quiñones, were not justified in conducting the bodily search at issue here. This, of course, requires probing the individual Defendants' knowledge and the facts and circumstances known to them at the time Plaintiff was searched.

Here, Plaintiff properly makes out a Fourth Amendment *Bivens* claim against Chief Quiñones in the operative Complaint, and is thus entitled to the discovery she seeks of this defendant. Plaintiff specifically accuses Chief Quiñones of depriving her "of her right to be free from unreasonable seizures, by seizing, arresting and detaining her without reasonable suspicion or probable cause that she was committing a crime, in violation of the Fourth Amendment to the Constitution." Second Am. Compl. 10. Plaintiff further pleads that Chief Quiñones and others also violated her Fourth Amendment rights "by 1) searching her person without reasonable suspicion or probable cause that she was committing a crime; and/or 2) searching her person in a highly unreasonable manner that invaded her right to bodily integrity and privacy." *Id.* at 11. Moreover, Plaintiff alleges that throughout the searches of Plaintiff's person "Chief Juan Quiñones communicated over the phone with CBP officers Portillo and Herrera and relayed instructions about the searches[, and that those] instructions were executed by CBP officers and

Medical Center staff." *Id.* at 10. This is sufficient to plead a *Bivens* claim under the Fourth Amendment against Chief Quiñones. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government–official defendant, through the official's own individual actions, has violated the Constitution."); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1003 (S.D. Tex. 2014) (citation omitted) (finding that to state personal–capacity claims, such as *Bivens*, plaintiff must allege that defendants were "personally involved in the deprivation of a right"), *appeal dismissed* (Sept. 17, 2014).

Accordingly, limited discovery regarding (1) what instructions Chief Quiñones relayed, (2) the circumstances known to him at the time he gave those instructions, and (3) the source of any information on which he relied are crucial for Plaintiff to attempt to rebut Chief Quiñones' qualified immunity defense. This limited discovery may show that Chief Quiñones' actions were objectively unreasonable in light of clearly established law concerning probable cause to search or seize a person.[6] The Court is cognizant that "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Court is also mindful, however, "that limited discovery may sometimes be necessary before [a] district court can resolve a motion for summary judgment based on qualified immunity." *Crawford–El*, 523 U.S. at 593

[6] Where Fourth Amendment claims are at play, discovery on the issue of qualified immunity will sometimes overlap with discovery on the merits of those claims. *See Anderson*, 483 U.S. at 641 (finding that "the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials"); *Melear v. Spears*, 862 F.2d 1177, 1183–84 (5th Cir. 1989) ("In effect, at least in probable cause cases, the two–part . . . test collapses because the relevant law concerning probable cause, at the level of specificity required by *Anderson*, only carries meaning when it is given content by the particular facts of a case."); *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 210 (N.D. Tex. 2000); *Cassanova v. Marullo*, CIV. A. No. 94–376, 1995 WL 448005, at *2 (E.D. La. July 27, 1995).

n.14. Permitting the deposition of Chief Quiñones on the limited matters described above strikes the proper balance between these competing interests.

**2. Request 2: Treasury Enforcement Communications System ("TECS")**

Plaintiff anticipates taking the "depositions of the owner of the TECS record and the [Homeland Security Investigations] agent who ordered the TECS hit" on which the CBP agents relied to search Plaintiff's person. Piñon Decl. 7; *accord* Resp. 6. Plaintiff also anticipates deposing "a corporate representative of CBP regarding . . . [t]he TECS system, including its purpose, the source of information stored there, why and how [Plainitff]'s name triggered an alert in TECS for drug smuggling, and CBP policies governing how TEC[S] alerts factor in the decision to conduct bodily searches." Piñon Decl. 7. Except for the deposition of the Homeland Security Investigations ("HSI") agent, Defendants object to this request on the ground that it is irrelevant to the qualified immunity issue. *See* Mot. 10; Reply 5. The Court agrees.

*a. TECS*

As discussed above, Plaintiff is entitled to discovery that may show the individual Defendants' actions were objectively unreasonable in light of clearly established law. Discovery regarding TECS is beyond this limited scope. Law enforcement agents are required to make probable cause determinations based on the circumstances known to them and of which they have "reasonably trustworthy information." *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991). In doing so, these agents may reasonably rely on information provided to them by other law enforcement agents or their superiors, even if the information is ultimately wrong, and still be protected by qualified immunity. *See id.*; *Rogers v. Hooper*, 271 F. App'x 431, 434–35 (5th Cir. 2008) (*per curiam*) (discussing relevant case law); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304–05 (5th Cir. 2004) (affirming grant of qualified

immunity to officer sued under unreasonable–search–and–seizure theory where officer entered plaintiff's house mistakenly based on information provided by other agents); *Perel v. Vanderford*, 547 F.2d 278, 280 (5th Cir. 1977) (holding that United States Customs agents were entitled to qualified immunity where the agents reasonably relied on computer printout in deciding whether to conduct strip search); *Greene v. Knight*, 564 F. Supp. 2d 604, 611–12 (N.D. Tex. 2008) (finding that officers may rely on information provided by other law enforcement personnel to perform their duties and that such reliance is "objectively reasonable").

Accordingly, absent an allegation that the CBP officers knew or had reason to believe TECS was not trustworthy, such that reliance on that system would not have been objectively reasonable, discovery into "[t]he TECS system, including its purpose, the source of information stored there, why and how [Plaintiff]'s name triggered an alert in TECS for drug smuggling" is unwarranted.[7]

*b. Depositions of TECS record owner and HSI agent*

Defendants do not object to the deposition of the HSI agent who generated the TECS record about Plaintiff and with whom CBP officers communicated during the search of Plaintiff's person. *See* Reply 5. But Plaintiff also anticipates needing deposition testimony from "the owner of the TECS record" who the CBP officers contacted in the course of the search. *See* Piñon Decl. 7. It is unclear whether "the owner of the TECS record" in fact refers to a person different from the HSI agent who "ordered the TECS hit." *See* Defs.' Mot. Summ. J., Exs. 2 ¶ 37, 3 ¶ 8, 4 ¶ 4. If these individuals are not the same person, then a deposition of the owner of

[7] While discovery into the TECS system may be appropriate against Defendant United States, *see Perel*, 547 F.2d at 280, that discovery may be had once the individual Defendants' qualified immunity defense has been resolved. At this time, discovery into this matter is "avoidable and overly broad," considering that qualified immunity should be resolved as early as possible and, as to government officials sued in their individual capacities, is intended "to avoid the burdens of such pretrial matters as discovery." *See, e.g.*, *Fleming*, 497 F. App'x at 388 (citations omitted).

the TECS record shall be allowed and limited to the same matters of inquiry as the deposition of the HSI agent who ordered the TECS hit, whose deposition Defendants do not find objectionable.

**3. Request 3: Policies and Procedures**

Defendants object to discovery regarding CBP policies and procedures relating to personal searches, medical searches, and obtaining consent from a suspect to be searched, as well as discovery relating to whether and how those policies and procedures were applied in the instant case. *See* Mot. 10–11; Reply 5–6; Piñon Decl. 7–8. In support of this objection, Defendants argue that such information is "unrelated to the issue of qualified immunity" and not in the individual Defendants' possession or control. *See* Reply 5–6. The Court finds the documents requested relevant to whether the individual Defendants' conduct was objectively reasonable in light of clearly established law, especially documents addressing whether and how CBP policies and procedures were applied in the instant case. Such documents shall be produced if they are in the custody or control of the United States. *See* Fed. R. Civ. P. 34(a). Although other discovery against the United States shall be stayed, *see infra* Section III.D, permitting Plaintiff to obtain these documents facilitates prompt and efficient resolution of the qualified immunity issue. *See Crawford–El*, 523 U.S. at 599–600.[8]

**4. Request 4: Discovery Concerning Canine Unit**

Plaintiff seeks discovery regarding the dog sniff upon which the CBP officers relied to conduct the bodily search described in the Complaint. *See* Piñon Decl. 9. Specifically, Plaintiff seeks the following discovery concerning the canine unit:

1. Any video recordings of the scent line–up conducted in this case;

[8] The Court's stay of discovery against the United States includes the propounding of interrogatories on this matter.

2. The dog's certification records;

3. Certification records indicating the training the dog received to become certified;

4. Logs of all searches involving the dog for one year;

5. Training logs for one year;

6. The Standard Operating Procedures for proper protocol for using a dog in line–ups, how it should alert, how it should behave during its encounters with people, how line–ups should be conducted, and general procedures regarding how dogs should be utilized by CBP;

7. The Standard Operating Procedures for training dogs which would show if this dog has been properly trained; and

8. Deposition by the dog handler.

*See* Piñon Decl. 9; Opposition, Ex. C ("Mutter Declaration") at 5; Mot. 11–12.

The canine unit and its behavior on December 8, 2012, are relevant to determining whether the individual Defendants' actions were objectively reasonable in light of clearly established law. The CBP agents who authorized the bodily search of Plaintiff relied, in part, on the dog's behavior. *See* Defs.' Mot. Summ. J., Exs. 2 ¶¶ 17–18, 3 ¶¶ 15–17; 4 ¶¶ 4–10. Specifically, the CBP officers relied on a "K9 officer [who] . . . walked the dog around the group of travelers two times . . . and indicated to the [CBP officers] present that the [dog] had given two positive alerts to [Plaintiff]." *See id.*, Ex. 2 ¶ 17. Defendants do not object to the deposition of this canine officer as to his personal knowledge and involvement in the alleged events. *See* Reply 6. That is enough for Plaintiff to obtain the discovery to which she is entitled from the individual Defendants. Further discovery on this matter is avoidable and overly broad, and shall not be allowed.

**5. Request 5: Expert Discovery Relating to Health Risks Associated with X–ray and CT Scans**

Plaintiff avers that she needs expert discovery relating to the health risks associated with x–ray and CT scans in order to rebut properly the individual Defendants' qualified immunity defense. *See* Piñon Decl. 9. Defendants argue that this discovery is irrelevant because expert testimony is not necessary to determine whether the individual Defendants' actions were reasonable in light of clearly established law. *See* Mot. 13. Whatever the relevance of expert discovery regarding this issue, Plaintiff need not obtain such discovery from Defendants. Rather, Plaintiff may secure admissible expert testimony or other expert discovery on her own accord without burdening the individual Defendants. Plaintiff will therefore not be allowed to obtain expert discovery relating to health risks associated with x–ray and CT scans from the individual Defendants.

***D. Discovery Against the United States***

The parties disagree regarding whether discovery against the United States on Plaintiff's FTCA claims should proceed simultaneously with discovery on the qualified immunity defense raised by the individual Defendants. *Compare* Mot. 13–15, *with* Resp. 10–13. Plaintiff's FTCA claims for assault and battery, and false arrest, are predicated on the actions of the individual Defendants. *See* Second Am. Compl. 12–13. As such, discovery for these claims would implicate the individual Defendants and may require them to participate in the discovery process beyond the narrow terms necessary to resolve the issue of qualified immunity. The Court will stay discovery against the United States, and "exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *See Crawford–El*, 523 U.S. at 597–98.

District courts are to "give priority to discovery concerning issues that bear upon the qualified immunity defense . . . since that defense should be resolved as early as possible." *Id.* at 600; *see also Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001) (citations omitted) ("Since qualified immunity is immunity not only from damages but also from suit itself, it is to be determined as early as possible."). The Court sees no reason to deviate from this admonition in the instant case. Relying on *Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007) (*per curiam*), Plaintiff urges the Court to find otherwise. But *Dusek* does not compel a different conclusion. The issue before the court in *Dusek* was whether an interlocutory notice of appeal on the denial of a defendant's qualified immunity defense divests district courts of jurisdiction over all claims in a case, including those claims to which qualified immunity does not apply. *See Dusek*, 492 F.3d at 564. The individual defendant whose qualified immunity defense had been rejected in *Dusek* argued that "her appeal of the district court's denial of qualified immunity [was] so broad as to divest the district court of jurisdiction to compel her compliance with discovery requests made related to" the other claims against her and another defendant in that case. *See id.* at 565. The court held, however, that an interlocutory appeal has no such effect, and found that a district court "*may* compel discovery disclosures related to the plaintiffs' [other] claims because doing so does not interfere with any aspect of [the appellant]'s appeal." *Id.* (emphasis added).

*Dusek* is thus inapposite to the issue before the Court: whether permitting discovery against the United States, while the individual Defendants' qualified immunity defense remains unresolved, is required. *Dusek* rather confirms that discovery matters are left to the sound discretion of the district court. Here, the FTCA claims against the United States are predicated largely, if not exclusively, on the alleged actions of the individual Defendants. If "protect[ing] the substance of the qualified immunity defense . . . so that officials are not subjected to

unnecessary and burdensome discovery or trial proceedings," *Crawford–El*, 523 U.S. at 597–98, means anything, it must mean that a court should, whenever possible, resolve the qualified immunity issue early and avoid subjecting individual government officers to discovery that is unnecessary to resolving the qualified immunity question. The Court therefore stays all discovery[9] against the United States until such time as the Court rules on the individual Defendants' qualified immunity defense. *See id.* at 598 ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the "Motion for Protective Order" (ECF No. 133), filed by Defendants United States Customs and Border Protection Officers Alicia Portillo, Veronica Herrera, Supervisory Officers Felix Castro, Gilbert Arciero, Chief Juan Quiñones, and the United States, is **GRANTED IN PART and DENIED IN PART**.

**IT IS ALSO ORDERED** that discovery on Plaintiff Jane Doe's claims against Defendants United States Customs and Border Protection Officers Alicia Portillo, Veronica Herrera, Supervisory Officers Felix Castro, Gilbert Arciero, and Chief Juan Quiñones **SHALL PROCEED** in conformity with this Order.

[9] As described in Section III.C.3 above, documents concerning CBP policies and procedures relating to personal searches, medical searches, and obtaining consent from a suspect to be searched, as well as documents relating to whether and how those policies and procedures were applied in the instant case, shall be produced to Plaintiff.

**IT IS FINALLY ORDERED** that, with the exception of documents regarding CBP policies and procedures relating to personal searches, medical searches, and obtaining consent from a suspect to be searched, as well as documents relating to whether and how those policies and procedures were applied in the instant case, discovery on Plaintiff Jane Doe's claims against the United States **IS HEREBY STAYED** until such time as the Court orders otherwise.

**So ORDERED and SIGNED this 23rd day of June, 2015.**

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE